UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GREAT AMERICAN INSURANCE CO.,

    Plaintiff,

v.                                                          Case No. 8:19-cv-3170-TPB-JSS

CRAIG MUELLER,

    Defendant.
_____/

## **ORDER GRANTING PLAINTIFF'S MOTION<br>FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on "Plaintiff's Motion for Partial Summary Judgment and Incorporated Memorandum of Law," filed on January 4, 2021. (Doc. 24). On January 22, 2021, Defendant filed his response in opposition. (Doc. 28). After being directed by the Court, the parties submitted supplemental memoranda to address the affirmative defenses raised in this case. (Docs. 29; 32; 34; 35). Upon review of the motion, response, supplemental memoranda, court file, and record, the Court finds as follows:

### **Background**[1]

The facts here are largely undisputed. Plaintiff Great American Insurance Company insures Vandernoord Partners LLP, the owner of Regatta Pointe Marina ("RPM") located in Palmetto, Florida. *Pro se* Defendant Craig Mueller is the owner of the M/V Mojave Moon – a 78-foot Pacemaker yacht.

---

[1] The Court construes the facts and evidence in the light most favorable to the nonmoving party for the purpose of ruling on the motion for summary judgment.

In September 2017, Defendant contacted the Harbormaster of RPM to ask about reserving a space in the marina. At that time, Defendant inquired as to the depth of the channel to confirm his ability to get his vessel with an 8 ½ foot draft to the marina. The Harbormaster indicated the channel was a minimum of 10 feet deep, and that the draft on the vessel would have no problem getting through the channel. At around the same time, Captain Gravolet, the captain of the M/V Mojave Moon, called RPM separately to inquire about the depth of the channel, and he was given the same information. On October 1, 2017, during the transport of the vessel by Captain Gravolet, the M/V Movaje Moon ran aground. The vessel had to be removed by a marine tow and was required to be taken to the closest marina, which was RPM.

There is some disagreement as to the formation of the written agreement that was eventually signed by Defendant. Viewing the facts in light most favorable to Defendant, as the nonmoving party, RPM requested that Defendant sign the Slip Agreement on October 2, 2017, but he did not want to do so because of the misrepresentation concerning the depth of the channel and subsequent grounding of his vessel. According to Defendant, he did not intend to keep the vessel at RPM any longer than a month. However, Captain Gravolet while originally at the marina was unable to remain onboard the vessel. Defendant claims that, after several heated conversations with Dockmaster Paul Van Ryn, Van Ryn threatened that if Defendant refused to sign the Slip Agreement, RPM would tow his vessel out of the marina and abandon it in the river channel. Defendant then signed the agreement

on November 8, 2017.[2] Among other things, the agreement contract required Defendant to keep his boat in safe condition and contained an indemnity provision requiring Defendant to pay for any damages in connection with the use of the marina and slip.

On December 15, 2017, fuel began spilling out of Defendant's vessel and into the marina. The diesel fuel spread throughout the entire marina and surrounding areas, and the amount of the spill was so serious that the United States Coast Guard arrived on the scene to investigate. As a result of discharge, RPM was forced to retain a contractor to mitigate the damages caused by the spill, resulting in $95,907.42 in fees, costs, and incidental losses.[3] Plaintiff has become subrogated to all of its insured's rights and interests to the extent of payments made to the marina.

On November 8, 2019, Plaintiff filed a three-count complaint against Defendant in state court, alleging: (1) breach of contract, (2) negligence, and (3) quantum meruit. Defendant removed the action on December 27, 2019. Plaintiff now seeks summary judgment on its breach of contract claim.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary

---

[2] The Slip Agreement lists a commencement date of October 2, 2017, and an expiration date of September 30, 2018.
[3] Although Plaintiff claims $97,675.04 in damages in the complaint, the motion for summary judgment sets forth damages of $95,907.42.

judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Where, the moving party will bear the burden of proof on an issue at trial, demonstrating the absence of a genuine issue of material fact requires the submission of credible evidence that, if not controverted at trial, would entitle the moving party to a directed verdict on that issue. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Only if the moving party meets that burden is the nonmoving party required to produce evidence in opposition. *Chanel, Inc. v. Italian Activewear of Fla. Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). Summary judgment should be denied unless, on the record evidence presented, a reasonable jury could not return a verdict for the nonmoving party. *Id.*; *see also Fitzpatrick*, 2 F.3d at 1115-16.

## Analysis

Plaintiff seeks summary judgment on its breach of contract claim.[4]  Under Florida law, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999).

### *Valid Contract*

To establish the existence of a valid contract, Plaintiff has submitted a copy of the written agreement signed by Defendant.  (Doc. 24-1).  Although Defendant contends that Plaintiff has not identified the "source" of the copy of this agreement, Defendant himself attached a copy of the same written contract to his own answer and affirmative defenses.  (Doc. 6-1).  As such, there is no issue as to authenticity of this written contract.

Defendant sets forth several affirmative defenses, some of which challenge the formation of the contract.  These are discussed in more depth below, but the Court ultimately concludes that Plaintiff has established the absence of any genuine issue as to existence of a valid contract.

### *Material Breach*

Plaintiff alleges that Defendant materially breached the terms of the written agreement by failing to pay for the costs of the oil spill at the marina.  Plaintiff specifically cites to several provisions of the contract that were breached –

---

[4] Defendant raises several evidentiary challenges to the exhibits attached to Plaintiff's motion for summary judgment.  The Court notes that Exhibit 3 – an affidavit from Dockmaster Paul Van Ryn – does not comply with 28 U.S.C. § 1746 as it does not include the required declaration.  The Court does not rely on this exhibit when ruling upon the pending motion.

paragraph 12 (vessel/boat), paragraph 16 (indemnification), and paragraph 26 (boat owner's liability for damage to marina). The fact that a significant amount of diesel fuel spilled overboard from the port side of Defendant's vessel into the waters of the marina while docked is undisputed. *See* (Doc. 24 at ¶ 1; Doc. 28 at 4). It is also undisputed that Defendant has failed to pay the costs associated with cleaning up the oil spill. (Doc. 24; 24-2; 28). As such, the Court finds that Plaintiff has established a material breach of the Slip Agreement.

*Damages*

Finally, to support its claim for damages, Plaintiff has provided an affidavit from Joanne Marziano – an employee of Plaintiff – and the related invoices. Although Defendant objects to this exhibit, the Court finds that the affidavit and invoices are admissible and should be considered as part of the motion for summary judgment. Even if Marziano was not the claims department representative that handled the subrogation claim, she appears competent to testify to the expenses paid by Great American based on the invoices and related business records.

The affidavit and invoices constitute prima facie evidence that these expenses were reasonable. *See Travelers Cas. and Sur. Co. of Am. v. Grace & Naeem Uddin, Inc.*, No. 08-61868-CIV, 2009 WL 6066973, at *2 (S.D. Fla. Dec. 1, 2009). As such, the burden shifts to Defendant to demonstrate that the costs and expenses are unreasonable. *See id.* It is not clear whether Defendant actually disputes the amount of damages. However, even if he does, Defendant has not provided any evidence to create a genuine dispute of material fact as to the amount of damages. *See Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (nonmovant must go beyond

the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."). As such, the Court concludes that Plaintiff has met its burden in establishing damages in the amount of $95,907.42.

*Affirmative Defenses*

To defeat summary judgement, Defendant must support his affirmative defenses with sufficient evidence to create a material issue of fact for trial. *See Harvey v. Lake Buena Vista*, 568 F. Supp. 2d 1354, 1361-62 (M.D. Fla. 2008) (citing *Coleman v. Smith*, 828 F.2d 714, 717 (11th Cir. 1987)) ("The mere assertion of an affirmative defense on which [Defendant] has the burden, without supporting evidence, is insufficient to withstand a motion for summary judgment."). Upon review, the Court finds the affirmative defenses raised by Defendant – comparative negligence, intervening cause, fraudulent inducement, and duress – do not preclude summary judgment.[5]

<u>Comparative Negligence</u>

In his second affirmative defense, Defendant asserts that the action is barred due to the comparative negligence of Plaintiff's insured, Vandernoord. Although evidence of negligence by Plaintiff may be relevant to an argument that Plaintiff failed to mitigate the damages arising from a breach of contract, it has no bearing on whether Defendant breached the Slip Agreement. *See Fed. Deposit Ins. Corp. v.*

---

[5] In his supplemental memorandum, Defendant withdraws his first affirmative defense (standing) and sixth affirmative defense (prevailing party attorney's fees). (Doc. 34 at 2; 4).

*Kunzmann Appraisals, Inc.*, No. 12-CV-80525-RYSKAMP/HOPKINS, 2014 WL 12531543, at *3 (S.D. Fla. Feb. 11, 2014). Moreover, Defendant has failed to put forth sufficient evidence as to Vandernoord's comparative negligence in this case. *See Harvey*, 568 F. Supp. 2d at 1361-62.

In addition, even if Defendant had provided some evidence of comparative negligence, the indemnity provision expressly provides that Defendant will indemnify RPM for acts and omissions of "any person," including negligence by RPM and its employees. *See* (Doc. 24-1 at ¶ 12). The provision for Defendant's liability for damage to the marina expressly provides that damages may be recovered even if they are "aggravated or incurred in whole or in part by the negligence of RPM" and its employees and agents. *See* (Doc. 24-1 at ¶ 26). This defense does not preclude summary judgment.

<u>Intervening Causes</u>

In his third affirmative defense, Defendant contends that the action is barred because Plaintiff's damages were caused by some intervening causes. Although not identified in the affirmative defense, Defendant argues in the response in opposition that these intervening causes are the Marina's misrepresentation that the channel was deeper than it was and Marina's failure to keep the dock in a safe condition. However, an intervening cause is "an independent cause which intervenes between the original wrongful act or omission and the injury." *Sexton v. United States*, 132 F. Supp. 2d 967, 975 n.5 (M.D. Fla. 2000). The misrepresentation of the channel depth cannot be an intervening cause because it occurred before the contract was entered into. Furthermore, Defendant has put forth no evidence to support his

contention that RPM's failure to keep the dock in a safe condition caused the damages resulting from the oil spill. Finally, the indemnity provision and provision for liability for damage to the marina expressly provide that Defendant will be responsible even where damage results from or is aggravated by the negligence of RPM. Accordingly, this defense does not preclude summary judgment.

Fraudulent Inducement

In his fifth affirmative defense, Defendant contends that Plaintiff's action is barred because Vandernoord fraudulently induced Defendant into entering the contract. In Florida, when a defendant invokes a fraud defense to a contract, "all essential elements of the fraudulent conduct" must be satisfied. *Guarantee Ins. Co. v. Brand Mgmt. Serv., Inc.*, No. 12-61670-CIV, 2013 WL 6768641, at *4 (S.D. Fla. Dec. 20, 2013) (quoting *George Hunt, Inc. v. Wash-Bowl, Inc.*, 348 So. 2d 910, 912-13 (Fla. 2d DCA 1977)). To prove fraud in the inducement, Defendant must demonstrate that (1) Plaintiff "misrepresented a material fact," (2) Plaintiff "knew or should have known that the statement was false," (3) Plaintiff "intended that the representation would induce Defendant[] to enter into the contract," and (4) Defendant was "injured by acting in justifiable reliance on the misrepresentation." *Id.* (citing *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1425 (S.D. Fla. 1996)).

Defendant claims RPM made a false statement regarding the depth of the channel, and that he relied on that statement to his detriment. However, at the time he signed the Slip Agreement, Defendant already knew about the depth of the channel; he therefore could not have relied upon this representation or have been injured in any way by acting in reliance on this representation at the time he

entered into the Slip Agreement. This defense does not preclude summary judgment.

Duress

In his response in opposition, Defendant raises a new affirmative defense for the first time – duress. Defendant argues he signed the agreement under duress because (1) RPM threatened to tow the vessel if he did not sign the agreement, and (2) he had no way to move the boat because its captain was injured at the time.

Under Florida law, "[t]o demonstrate duress, a party must show (1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that said circumstances were the result of coercive acts of the opposite party." *Berman v. Kafka*, 518 Fed. App'x 783, 785 (11th Cir. 2013) (quoting *Woodruff v. TRG–Harbour House, Ltd.*, 967 So.2d 248, 250 (Fla. 3d DCA 2007). To constitute legal duress, "the act of the party compelling the unwilful obedience of another must be unlawful or wrong." *Id.* at *6 (quoting *Corporacion Peruana de Aeropuertos y Aviacion Comercial v. Boy*, 180 So. 2d 503, 505 (Fla. 3d DCA 1965)). If a party has a legal right to do something, it cannot constitute duress to threaten to perform that action. *Id.* (citing *City of Miami v. Kory*, 394 So. 2d 494, 498 (Fla. 1st DCA 1981)).

Here, RPM would be within its legal rights to remove the vessel had Defendant not signed the Slip Agreement. Moreover, Defendant's subjective belief that he had no other option but to sign the Slip Agreement, without any evidence of

wrongdoing, does not provide justification to invalidate the Slip Agreement.[6] *See id*. Accordingly, this affirmative defense does not preclude summary judgment.

## Conclusion

Plaintiff has submitted sufficient evidence to support its breach of contract claim, and the affirmative defenses do not preclude summary judgment. As such, based on undisputed material facts, the Court concludes that Plaintiff is entitled to summary judgment on Count I of the complaint.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Plaintiff's Motion for Partial Summary Judgment and Incorporated Memorandum of Law" (Doc. 24) is hereby **GRANTED** to the extent that summary judgment shall be entered in favor of Plaintiff Great American Insurance Co., and against Defendant Craig Mueller, on Count I of the complaint, in the amount of $95,907.42.

(2) The Court will enter a final judgment once all claims have been resolved.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 30th day of April, 2021.

                                        **TOM BARBER**
                                        **UNITED STATES DISTRICT JUDGE**

---

[6] This belief is clearly subjective – for example, even if Captain Gravolet was injured, Defendant could have hired a new captain to remove the vessel from the marina.